UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JOSEPH J. ROTH-BRADLEY,

    Plaintiff,

    v.

ALEJANDRO DAVILLA *et al.*,

    Defendants.

CAUSE NO. 3:25-CV-388 DRL-SJF

OPINION AND ORDER

Joseph J. Roth-Bradley, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983 and a motion for a preliminary injunction. (ECF 1, 2.) Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

BACKGROUND

Roth-Bradley is an inmate at Westville Correctional Facility who claims to have been diagnosed with opioid use disorder (OUD). In 2024, he was participating in a

medically assisted treatment (MAT) program, through which he received suboxone daily to manage his addiction. In September 2024, he began to complain that unidentified "nursing staff" and "correctional staff" were not giving him the drug in a timely fashion, which caused him to suffer minor withdrawal symptoms like constipation, loss of appetite, and headaches.

After he complained, an incident occurred on or about October 22, 2024, wherein he was "denied his medication," although he does not explain what happened or who denied him the medication. He was feeling sick and asked an unknown person if he could speak with "high-ranking custody staff" about the issue. In response, Officer Alejandro Davilla came to his cell to speak with him. He claims Officer Davilla flashed a bright light in his eyes and said, "You don't look sick or in distress to me." He told Officer Davilla that he was not a medical provider qualified to make that determination. Officer Davilla allegedly became angry and called him a "junkie" and "dope fiend" and told him he was "not going to get shit" before walking away.

Since that date, his suboxone was discontinued completely. He claims the sudden termination of this medication caused significant withdrawal symptoms, including weight loss, depression, body aches, and stomach problems. He further claims that because of the lack of suboxone, he has relapsed into using illegal drugs he is able to obtain at the prison. Based on these events, he sues multiple prison employees for money damages and injunctive relief in the form of treatment for his OUD.

ANALYSIS

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

On the second prong, deliberate indifference represents a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to state an Eighth Amendment claim. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. The court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotations omitted). In effect, the Eighth Amendment protects prisoners from "grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019).

Giving Roth-Bradley the inferences to which he is entitled at this stage, the court will presume that his opioid addiction amounts to a serious medical need, as he claims to have been diagnosed with a disorder and prescribed medicine for this issue in the past. On the second prong, he sues two doctors, a mental health provider, and a nurse, but he does not mention them by name in the narrative section of his complaint or explain in any detail what they did, or did not do, with respect to his medical treatment. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and these individuals can only be held liable for their own actions, not for the "misdeeds" of other prison staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).

The court cannot plausibly infer from the minimal information he has provided that any of these individuals personally exhibited deliberate indifference to his medical problem. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (inmate who named nine defendants in his complaint but made no personal accusations against them did not state a claim under federal pleading standards). He refers to them collectively as having "actual knowledge" of his problem, but this is also insufficient. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (allegations that referred to "defendants" collectively without connecting specific defendants to specific acts were insufficient under federal pleading standards); *see also Henderson v. Wall*, No. 20-1455, 2021 WL 5102915, 1 (7th Cir. Nov. 3, 2021) ("[B]y making allegations about large, indeterminate groups of defendants, [the plaintiff] deprived them all of proper notice of what they were accused of doing."). Likewise, he sues a counselor in the MAT program without mentioning this individual

4

by name in the narrative section or explaining what she did that violated his rights.[1] He has not alleged a plausible Eighth Amendment claim against any of these defendants.

As for Officer Davilla, it appears unlikely—and Roth-Bradley does not allege—that this non-medical staff member had the ability to control his prescriptions. Nevertheless, Roth-Bradley alleges that Officer Davilla was aware he was suffering withdrawal symptoms on October 22, 2024, and refused to get him any medical assistance. Instead, the officer allegedly called Roth-Bradley names and told him he was "not getting shit" because the officer was angry about a comment Roth-Bradley made. Under the circumstances, this could amount to deliberate indifference. He will be permitted to proceed on an Eighth Amendment claim against this defendant.

Roth-Bradley claims to have an ongoing need for treatment for OUD. As explained, he claims the lack of suboxone has caused him depression and weight loss among other physical symptoms, and has resulted in him using illicit drugs to self-medicate. He asks to be put back on suboxone or a similar medication. The Warden of Westville has both the authority and the responsibility to ensure that inmates at his facility are provided with necessary medical care to address serious medical needs. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). The Warden will be added as a defendant, and Roth-Bradley will be permitted to proceed on an Eighth Amendment

---

[1] To the extent he is seeking to enforce his rights under the prison's MAT program, such a claim is not viable under 42 U.S.C. § 1983. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations").

claim against the Warden in his official capacity for injunctive relief related to his need for treatment for OUD.

Roth-Bradley states that he is also pursuing a claim under the Americans with Disabilities Act (ADA), which prohibits disability discrimination. Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "Disability" in this context means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." *Steffen v. Donahoe*, 680 F.3d 738, 743 (7th Cir. 2012) (citation and internal alteration omitted). When an inmate seeks damages, the court of appeals has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act given the uncertainty about the availability of damages under Title II. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012). Relief under these two statues is coextensive. *Id.* To allege a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

Roth-Bradley's allegations do not adumbrate a disability discrimination claim. He does not plausibly allege that he is being denied services *because* of a disability. Rather, he describes a lack of medical care *for* his disability. The denial of medical care does not give rise to a claim under the ADA or Rehabilitation Act. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[I]t would be extremely odd to suppose that disabled persons whose

6

disability is treated negligently have a [] claim by virtue of the Americans With Disabilities Act."); *Perrey v. Donahue*, No. 3:06-CV-617, 2007 WL 4277621, 4 (N.D. Ind. Dec. 3, 2007) (claim for inadequate medical treatment is improper under the ADA and the Rehabilitation Act, and instead the proper avenue for claiming inadequate medical treatment is through the Eighth Amendment). His complaint makes clear that his issue is with the lack of medical treatment he is receiving for OUD. The appropriate vehicle for asserting a claim regarding the denial of medical care is under the Eighth Amendment, and he has already been granted leave to proceed on such a claim. He will not be permitted to proceed under these federal statutes.

Finally, he sues for unlawful retaliation. To state a First Amendment retaliation claim an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012).

The complaint can be read to allege that Roth-Bradley's suboxone was terminated because he made internal complaints about the way he was receiving this medication. Filing a complaint or grievance about a non-frivolous matter qualifies as "protected activity" for purposes of a retaliation claim. *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). Additionally, being terminated from a necessary medication could "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). However, on the third prong, Roth-Bradley does not

7

provide any details about whom he made his complaints to or whom he complained about. The court cannot plausibly infer from the minimal information he provides that any defendant acted with a retaliatory motive. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("putting a few words on paper that, in the hands of an imaginative reader, might suggest that something has happened . . . that might be redressed by the law" is not enough to state a claim under federal pleading standards). He will not be permitted to proceed on a First Amendment retaliation claim.

Roth-Bradley separately moves for a preliminary injunction. He asks the court to order prison staff to provide him with medication for his OUD. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id*. at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotations omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable

inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must endeavor to assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and quotations omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

The Eighth Amendment does not entitle Roth-Bradley to a specific medication, *Walker*, 940 F.3d at 965, or to "the best care possible," *Forbes*, 112 F.3d at 267. Nevertheless, his complaint and motion can be read to allege that he is not receiving any treatment for his OUD, which among other things has caused him to resort to using illegal drugs. He is reasonably concerned that these illegal drugs could cause him "serious harm or death." At present, however, the court only has Roth-Bradley's version of events and it is difficult

to determine on this limited record whether he is likely to prove that he is receiving constitutionally inadequate medical care for a serious medical need. In light of the deference owed to prison officials and the limitations on granting injunctive relief in the correctional setting, the court will order the Warden to respond before taking further action on his request for a preliminary injunction.

For these reasons, the court:

(1) DIRECTS the clerk to add the Warden of Westville Correctional Facility as a defendant;

(2) GRANTS the plaintiff leave to proceed against the Warden of Westville Correctional Facility in his official capacity for injunctive relief related to the plaintiff's ongoing need for treatment for opioid use disorder;

(3) GRANTS the plaintiff leave to proceed against Officer Alejandro Davilla in his personal capacity for money damages for refusing to get medical attention for the plaintiff when he was experiencing withdrawal symptoms on or about October 22, 2024, in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Tori Halcarz, Jackson, Leech, Peterson, and Dawn Schilling as defendants;

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on)

the Warden of Westville Correctional Facility by email to the Indiana Department of Correction with a copy of this order, the complaint (ECF 1), and the motion for a preliminary injunction (ECF 2) pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to fax or email a copy of the same documents to the Warden of Westville Correctional Facility at Westville Correctional Facility;

(8) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Officer Alejandro Davilla at the Indiana Department of Correction and to send him a copy of this order and the complaint (ECF 1) pursuant to 28 U.S.C. § 1915(d);

(9) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(10) ORDERS the Warden to file and serve a response to the plaintiff's motion for a preliminary injunction no later than **June 30, 2025**, with supporting documentation and declarations from staff as necessary, addressing the plaintiff's need for medication or other treatment for opioid use disorder; and

(11) ORDERS the Warden and Officer Alejandro Davilla to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

May 2, 2025                                                 *s/ Damon R. Leichty*
                                                                                       Judge, United States District Court